Nicholas Porrit on behalf of Plaintiff Appellant Mr. Hampton. Your Honours with your permission I'd like to reserve three minutes for rebuttal and your own time. Thank you. Could you move your microphones up a little bit if they're movable? Yeah thank you. Is that better? Yeah. I don't want to deafen anyone. Your Honours this appeal once again presents to this court the issue of the ability of investors in a mutual fund to recover against the mutual fund for breaches of the terms of that mutual fund in the way in which there that fund was invested. It involves the concerns of whether that involves a breach of contract and whether that is precluded by the provisions of the Securities Litigation Uniform Standards Act of 1988, 1998 which I refer to as SLUSR. Your Honours, one, do they have viable contract claims and secondly is prosecution of those claims as a class action precluded by SLUSR and I think both those questions are answered by prior Ninth Circuit precedent. I think Ninth Circuit precedent particularly the Freeman case and Falkowski disposes of the issue about whether SLUSR precludes these claim and decides that it does not and we think this Ninth Circuit's prior decisions in North Star in particular what is referred to as North Star 5 in a many many reported North Star case and so I'll continue that that nomenclature. We're talking about the right North Star case I thought that didn't decide the SLUSR issue or not decide, sorry Your Honours, it did not decide the SLUSR issue. Exquisitely left it open. It did but it did decide whether it was whether there was a viable contract claim and deciding in that case that there was a viable contract claim and we would just submit that our case is on all fours with that. Well you could have a contract claim that also implicates fraud in other words if a promise is made without the intent to keep it then it also is a fraud and and SLUSR deals with that kind of fraud so how do you get around that? Well because it is not our allegation that a promise was made without any present intent to keep it. Our allegation is premised on the promise statement term of the contract that they would observe a cap of 15 percent of investments in emerging countries or investments connected to an emerging country. That promise was made in 2007 and was repeated throughout right the way through to the beginning of the class period 2014 in fact to the end of the class period in September 2014 and was observed by PIMCO for over six years. And but it was continued throughout the class period they kept making this statement as people bought as members of your class presumably bought shares in the mutual fund based on this 15 percent policy. And it is it is central to our case that that's a true statement that was the investment policy of the fund because it could not be changed without shareholder approval which had not occurred. So that was still an accurate statement of the investment policy for the concentration that particular industry emerging markets. So it is central to our case that that is a true statement not a misrepresentation a true statement. So and they and they breached that contract. Whenever you have a contract breach you inevitably have at some point in time a moment when the promise if you like is no longer quote true to the extent that they that the party has decided to breach that contract. That is exactly what we have alleged here. But they I just want to understand your argument from the time that they that they that they deviated from the from the 15 percent that's within the class period and they were they did not disclose in effect to people who were buying shares that they were they had deviated from that policy and certainly at least from that point on there was a it was a fraud on the people who were purchasing and your response is that they didn't get the proper authorization from from well whoever they were from the board or whoever they were supposed to get it from? Well they needed approval from the shareholders your honor again so because it requires when you have a policy under the terms of the Investment Company Act when you have a what's called a fundamental investment policy which we submit this is once it's set once it comes once the investment fund says this is who we are this is what we're going to do you cannot then change that without getting shareholder approval as to what that is what that change would be and they did not obtain that shareholder approval in fact never obtained that shareholder approval. But that still does not make the statements that were made as a misrepresentation. I don't think. Why not? They weren't true at the time they were made were they? I mean I'm not talking about the initial statements but they once it was continued to be represented that they would have a 15% cap when in fact they're over that wasn't that misrepresentation? Well we don't allege any specific misrepresentation as in a public statement made during the class period what was made was the last public statement we identify was I believe in the July 2012 registration statement which put forward this cap that sort of continues in effect but they didn't renew it or remake it and then what was disclosed in June 30 and then later in September was that they have exceeded that cap i.e. they admitted their breach. So we don't submit that there was any there's no fraud or deceit in the sense that this was something which was hidden from from investors. Well I get a prospectus after they've after they've changed their policy and it it it indicates the 15% goal and I purchased I said well that's reasonable and I and the statement is false so haven't I been defrauded? I would submit not your honor I think it is state that the statement is what is the investment policy of the fund as and as required by the Investment Company Act as has been stated throughout and that is the 15% cap is still an accurate statement of what what the policy was. I don't think it is a statement of the term of the purchasing shares in the fund. But what's the contract then? The prospectus is the offer and the purchase is the acceptance in the normal in the normal. Correct your honor. I think Northstar actually said that. Correct your honor. So so that is the contract you have signed up for. Yes but but the but for people who purchased after they did they they just changed their policy and went to 21 or 26% they were actually not told the truth they were being deceived as to what they were buying in effect. Well so here we would we would submit and again we don't know exactly when they exceeded the 15% I mean that information is not available to us obviously we're on a motion to dismiss you know we're at a pre-discovery stage. In Northstar for instance they had a pre-breach and a post-breach class this court determined that both had a viable claim for breach of fiduciary duty and breach of contract without getting into Slusa. So here we would also have a pre-breach and a post-breach potentially classes we don't know exactly when they when the exceeding the 15%. What would your pre-breach pre-breach class consist of here? It'll be everyone who purchased everyone who purchased shares in the total return fund prior to the breach the decision to breach the 15% cap. I'd still want to save some time for rebuttal your honor but I'll stay here answer whatever questions you have your honor. I mean this is another example just a I don't want to lose point we did ask for we weren't given leave to amend for instance your honor these are some of the things which as as you know this is a very technical pleading there's almost back to pre-notice pleadings is almost like common law classic common law forms of pleading where individual words make critical differences. So we sought leave to amend the court denied us the right to that we would want we would certainly seek leave to do that. You've got a minute and a half I think you might want some time for rebuttal. I will your honor so if unless you have any further questions for me at this Thank you your honor. Good morning your honors may it please the court Matthew Larrabee for Appalese. I think the court's questions of appellants counsel are directly on the mark. This appeal raises only one disputed issue specifically the issue is whether the claim the amended complaint alleges in substance a misrepresentation or omission. If it does all other requirements of Sousa are met district court should be affirmed the case should be dismissed. In thinking about that question I'd urge the court to focus on three observations directly related to your questions. First the document at issue here is a prospectus it's a Securities Act of 1933 which mandates this document and dictates its contents. That Act also provides remedies for violations of the terms of a prospectus. Investors are allowed to sue under the federal securities laws under section 11 section 12a of the 33 Act for misrepresentations in a prospectus. Why is that important here? Because the definition of what a misrepresentation is under the federal securities laws is the same definition of what a misrepresentation is for Sousa purposes. They are coterminous. The operative provisions of Sousa specifically refer to both the 33 Act and the 34 Act. So what appellant is asking you to hold in effect is the facts at issue here are not precluded by Sousa because there's no misrepresentation. That holding necessarily means as a matter of law the claim here does not allege a misrepresentation for violation of section 11 or 12. That would be startling news to the plaintiffs who are suing mutual funds every year in this country for violations of those statutes on the premise that a prospectus is saying one thing about what the fund is going to be managed. In this case it would only invest up to 15% of its assets and the fund is doing something else. That's at the very core of the federal securities laws. It is therefore at the very core of Sousa. The class definition here is instructive and gets at this point about isn't there really a claim about what your honor called a fraud. And I will note that the 33 Act does not require intent. It's essentially a strict liability statute. So intent is not the issue. It's whether there is a misrepresentation of fact that is the issue. Here the class is defined to include shareholders who invested from April 1 of 2014 until September 12 of 2014. The complaint explains why those dates are important. April 1 is the very first day of the very first quarter when the fund allegedly invested more than 15% of its assets. That exceeded the cap. September 12, even more important date, is the date the fund issued a supplemental disclosure, which the complaint specifically alleges was the first date the fund told people it was going to exceed 15% of its assets. So a class that is not alleging claims during a time period when the prospectus is accurately describing what the fund is doing before or after the class period, but is alleging claims about what the fund was telling investors what was actually happening, is a misrepresentation of fact. And are you conceding that your clients made a misrepresentation? Absolutely not, your honor. And actually that really does not matter for SUSA. I understand that. I'm just asking. No, any securities claim has defenses and we have lots of defenses. And actually Appellant's brief has pointed out several of our defenses in trying to say there's no claim here. But the claim, the core of the claim for SUSA purposes is, was the prospectus allegedly accurate at the moment of purchase? The answer here is unequivocally not. I think with all respect to Mr. Porat, his statement that the fund accurately described the policy is beside the point. What the securities laws care about and what SUSA cares about is, is the claim about whether the fund was actually describing a matter of fact what was actually happening. And this claim is that it is not. What about, can I ask you, what about people who purchased before the initial, the date that the class began and they, they relied on this 15% and they held onto it after the change in policy? Were, were, were they defrauded? There is in theory something called a holder claim, which the Supreme Court addressed in blue chip stamps. And the theory of a holder claim is essentially that, that there was a misrepresentation that induced people to hold shares past the time when they would have otherwise sold them. The Supreme Court held in blue chip stamps that claim is not recognized under the securities laws for policy reasons because it gave rise to too great a risk of vexatious litigation. DABIT, then the Supreme Court addressed the question I think we're getting at now, if that claim were alleged, and I must say it is not alleged here, has never been alleged in this case. There's never been a request to allege that claim in this case. So it is not the case that this court has before it right now. But the Supreme Court in DABIT said, confronted the issue, should SLUSA preclude a holder claim? Blue chip stamp says you can't pursue that claim under the federal securities laws. Supreme Court confronted the issue, well therefore, because there was a split in the circuits, should we allow, should we rule that SLUSA doesn't reach that claim? And DABIT said unequivocally, no, it is still precluded because the heart of the claim is a misrepresentation. And that's what the statutory elements are. There is no parallel between the statutory requirements of SLUSA on the one hand, and the elements of a viable securities law claim on the other hand. There is overlap, but they are not coterminous. And the statutory requirements for SLUSA are very specific. The only one at issue here, is there a misrepresentation? Answer is yes, even in a holder claim. Therefore, preclusion. Last thing I would say, Your Honor, the court is, if you actually look at the amended complaint itself, and this is something the district court observed, it specifically mentions representations and misrepresentations in multiple places. It's covered in page 17 of our brief, but I'll give the court three examples. And paragraph 7 of the complaint specifically says, and I'll quote here, the fund exceeded the cap, the investment cap, quote, despite repeated representations to the contrary. That's at excerpt of record 270. Paragraph 71, investors were, quote, unaware that the fund, quote, did not even file a correct prospectus until after the risky investments were made, close quote. Again, paragraph 81, it lists the common questions for class certification. You have to identify those. There are four of them, and they focus on whether defendants, quote, made specific representations, and whether they, quote, deviated from specific representations. Again, representation language, misrepresentation language throughout the case. That's not sloppy drafting. The reality is that the claim at its core is a disclosure claim. If appellants were to stand up in rebuttal this morning and say, we are telling this court that at every moment in time, the prospectus accurately described the fact of the matter, accurately described the fact of what the fund was doing with its investments, accurately described that it was above the cap, or whatever they say. But if the prospectus, they were going to say the prospectus itself was literally true at every point in time, that might be a path for them to get out of SLUSA. But it would actually obviate any claim. There would be another basis for affirmance here, because there would be no violation of any duty under state law or federal law. There would be no harm, there would be no wrongdoing, there would be no conduct. And that's why they can't say that. And that's why fundamentally what happened here is they didn't. That's why it's in the amendment complaint in the way it is. Last thing I would say, just in closing, these are, appellants are people who had remedies. These are not investors in a mutual fund who did not have a remedy. They could have pursued the claim they originally filed under the federal securities laws, 10b-5. They could have pursued claims, again, class action claims under section 11 or 12. They could have pursued individual contract claims. They could have done that under state law. They could have pursued class actions up to 50 people. They just chose the one thing Congress said, the one remedy Congress said, you can't have. You cannot have a state law class action involving a covered security when the core of your claim is that a fund, a mutual fund issuer, is telling people one thing and doing something different from the prospectus.  Right. First of all, this is an amended complaint. This was their amended complaint. And second of all, I think the district court's ruling that it was futile is correct. Look, for the reason I just articulated, either appellants have to take the position that the prospectus did not accurately describe the fund's investments during the class period, in which case their claim is precluded by SLUSA, or they have to take the position that the prospectus was true at all points in time, in which case there's no breach of any duty and no claim. And that's, I believe, why in asking for leave to a man, they've never articulated what amendment they're going to provide. But you just said that they have causes of action. That are precluded by SLUSA. Could you just give me a minute? Yeah. Further questions? Thank you for your argument. I think he was... Yeah, I just, for example, in the Holtz case, which was a case that was called to our attention in a 28-J letter, Judge Easterbrook wrote, if she wants to pursue a contract or fiduciary duty claim under state law, she has only to proceed in the usual way. The SLUSA is limited to covered class actions, which means Holtz could litigate for herself and as many as 49 others. Right. Could she amend her complaint to allege that? What Judge Easterbrook said, she could. They did not ask to do that, but I take your point that SLUSA's reach is both broad and narrow. Narrow in the sense that those claims would survive SLUSA. So if you... That's not this case. They haven't asked it. Those claims may be time-barred. I'm not sure they'd want to invest in those claims, certainly in the way that they're investing this. There's lots of reasons they wouldn't. So they didn't ask to amend it to include this? Correct. Okay. Thank you, counsel. Your Honor. Thank you, Your Honor. I'll quickly address the second point, the last point first, on the leave to amend. We did request leave to amend in the court below, which was denied us. We did not submit a fully blown proposed amended complaint. We did not have the benefit of the court's ruling. He denied it with prejudice even before we had a chance. So we would submit with an opportunity to both address whatever this court decides and whatever, in the event that the court determines a dismissal under SLUSA was appropriate, we would certainly seek leave to amend a complaint to reflect that and assert whatever claims on a class basis or an individual basis or a limited class basis may be available to us. It's also, just as a pure matter of law, it was improper, the dismissal is with prejudice, which is improper in any event because the claims, even the individual claims, are not precluded. It's not preempted under SLUSA. It's simply precluded to be included in the class action. So it should be without the prejudice, certainly as to Mr. Hampton, as to all I think by focusing on the class period and the disclosures that triggered the selection of that, that is really the key misrepresentation here. The alleged representation is not what the fund was doing. The misrepresentation is what is the fundamental investment policy of the fund, and that was a 15% cap, and that was true throughout the class period. So that representation as to what the policy of the fund was true throughout the class period, and they breached it. It's two very different things. And that would we submit is the difference that otherwise there's a danger here that almost every breach of contract case in connection with securities can be used, another judge in a dissent actually in another Seventh Circuit case called it by legal jujitsu, to turn it into a misrepresentation case. Almost every breach of contract can be turned into, well, you said something you didn't really mean in terms of this contract. And that is not what SLUSA was designed to do. SLUSA was designed a garden variety securities class actions based on fraud on the market, misrepresentation by the issuer with no privity whatsoever with the class, trying to bring those claims under state blue sky laws or under consumer protection statutes or some other sorts of state law class action mechanism to avoid the PSLRA. That is not what this is about. This is a very different type of claim. It does not involve a fundamental misrepresentation and corrective disclosure. It involves an admitted breach of the contract. And we would submit certainly people who purchased prior to April 1st who owned the shares, they would have their contractual rights. That would be that their fund interest would still be managed in accordance to the terms that they accepted without their authorization. And they would have claims that submitted that would not be precluded under SLUSA under those circumstances. So that is when we talked about Northstar, the pre-breach class and the post-breach class could be viable in this particular situation. Thank you, counsel. Thank you. The case just argued will be submitted for decision. Thank you both for your arguments.
judges: Reinhardt, Thomas, Korman